ROBERT H. HORN (SBN 134710)
(rhorn@proskauer.com)
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA 90067-3206
Telephone:    (310) 557-2900
Facsimile:    (310) 557-2193

LAWRENCE I. WEINSTEIN (*pro hac vice* application to be filed)
(lweinstein@proskauer.com)
BRENDAN J. O'ROURKE (*pro hac vice* application to be filed)
(borourke@proskauer.com)
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Telephone:    (212) 969-3000
Facsimile:    (212) 969-2900

*Attorneys for Plaintiff Dyson, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| DYSON, INC., | CASE NO. CV10- |
| Plaintiff, |  |
| v. | **COMPLAINT FOR INJUNCTION, DAMAGES, AND OTHER RELIEF** |
| GARRY VACUUM, LLC and ENVION, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. |  |

CV10  1626

Plaintiff Dyson, Inc. ("Dyson"), by its attorneys Proskauer Rose LLP, hereby alleges the following based upon knowledge as to its own acts and actions and upon information and belief as to all other matters.

### INTRODUCTION

1.    This is a civil action for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and related violations of the California False Advertising and Unfair Competition Acts, Cal. Bus. & Prof. Code § 17500 *et seq.* and § 17200 *et seq.*, and California common law.  Dyson seeks permanent injunctive relief,

1

1  statutory, punitive, and compensatory damages, attorneys' fees, and Defendants'

2  profits.

3      2.      Dyson sells and distributes vacuum cleaners, other consumer products

4  and related accessories.  Dyson's products are widely known in the United States

5  and abroad as highly innovative in the vacuum industry.  Dyson's top-quality

6  vacuum cleaners have taken the U.S. market by storm due to their patented

7  advancements in both design and functionality.

8      3.      Dyson sells several different upright vacuum models in the U.S.

9  Currently, Dyson's most popular vacuum model in the U.S. is the Dyson DC25

10  model.  The success of the DC25 All Floors model is due, in large part, to two

11  incomparable features that provide advances over other competing vacuums:  (1)

12  Dyson's patented Dyson Ball™ technology, which allows for increased

13  maneuverability of the vacuum cleaner over standard wheeled upright vacuums

14  and (2) Dyson's patented cyclonic technology which results in exceptional

15  cleaning capability.

16      4.      Defendants sell and offer for sale in the U.S. a vacuum cleaner called

17  the Garry™ Ultra-Light Upright Vacuum by Envion™ (the "Garry Vacuum").

18  The Garry Vacuum competes with the DC25 and other Dyson vacuum cleaners in

19  the U.S. market for household upright vacuum cleaners.  In Defendants'

20  advertising at issue in this case, Defendants repeatedly and explicitly compare the

21  Garry Vacuum to the Dyson DC15 vacuum cleaner, a model that Dyson phased out

22  almost two years ago, as well as to Dyson vacuums generally.  In these

23  comparisons, Defendants claim that the Garry Vacuum performs equally as well

24  as, or better than, Dyson vacuums in various respects.  In fact, testing performed

25  using industry-accepted test methods show that Dyson's vacuum cleaners vastly

26  outperform the Garry Vacuum.  Moreover, contrary to Defendants' advertising

27  claims, the Garry Vacuum does not even approach the technological advances of

28  Dyson vacuum cleaners.  Dyson vacuum cleaners are high-end machines with the

finest mechanical engineering in the market; the Garry Vacuum is not even remotely equivalent in design or performance.

5.     This action arises from an aggressive advertising campaign for the Garry Vacuum that Defendants continue to run in this District and throughout the U.S.  In their advertisements, Defendants attempt to piggyback off the fame of the Dyson brand, and consumer understanding of the superior features and performance of Dyson vacuums, by portraying the Garry Vacuum as the lower-cost performance equivalent of Dyson vacuum cleaners, and in some respects even as superior to Dyson vacuums.  Defendants' advertisements make direct comparisons to Dyson upright vacuum cleaners that falsely represent to consumers that Garry Vacuums are at parity with, and/or superior to, Dyson vacuum cleaners in terms of product specifications, cleaning performance, and maneuverability in the following ways:

(a) falsely claiming that the Dyson was a "great machine in [its] day," but that the Garry Vacuum now "delivers all the leading edge technologies Dyson doesn't have . . . at only one-third the cost," and that "Garry takes vacuum technology further" by making an "amazing" vacuum for a "fraction" of what one pays for a Dyson vacuum cleaner;

(b) falsely claiming that consumers who want a high-performance vacuum cleaner at a "fraction of the cost" should purchase a Garry Vacuum that "does the exact same thing";

(c) falsely and disparagingly depicting the process of emptying a Dyson dirt cup (where dirt and dust picked up by the vacuum is stored) as creating a cloud of dust that causes the actors to cough and to comment on the need to open a window; Defendants accomplish this by emptying the dirt cup in a manner completely contrary to normal consumer use, and indeed contrary to the user instructions provided with Dyson vacuums and to

common sense, and thus falsely portray Dyson vacuum cleaners as causing dirty and unhealthy conditions in consumers' homes;

(d) falsely claiming that Garry Vacuum has "40% more suction power than the leading competition";

(e) falsely claiming that the Garry Vacuum "outperforms even the most expensive competition," and that consumers can use the Garry Vacuum to "get your carpets and your home clean in half the time for a fraction of the cost of the . . . Dyson";

(f) falsely claiming that "with a $700 Dyson you'd actually have to move the couch" to clean underneath it;

(g) falsely claiming that Dyson upright vacuum cleaners have such a "high profile" that they will not maneuver to fit in or under tight spaces;

(h) falsely claiming that the weight of a Dyson vacuum cleaner prevents users from easily moving the vacuum up and down stairs in a house; and

(i) falsely claiming that Dyson upright vacuum cleaners cost $700;

(j) falsely claiming high-performance attributes of the Garry vacuum, including (1) that there has "never been a better cleaning machine;" (2) that the Garry vacuum "cleans and purifies the air" in a consumer's home with hypoallergenic filtration and germicidal bags that trap "99% of all dirt, dust, germs and allergens;" and (3) that just one Garry machine can vacuum up twenty years of household dirt.

Moreover, Garry's advertisements do not direct their claims and comparisons to Dyson's currently marketed vacuum cleaner models; rather, they compare the Garry Vacuum to the Dyson DC15 Animal—a Dyson vacuum cleaner of which new units are no longer sold, and in fact, a model that was phased out in the Spring of 2008—almost two years ago.

6.      Defendants have no basis for any of the challenged advertising claims. Dyson testing demonstrates that Defendants' suction, dust pick-up, and other performance parity and superiority claims are literally false.

7.      Defendants' dissemination of false and misleading claims in the advertising at issue in this case falsely communicates to consumers that the much lower-priced Garry Vacuum offers the same high-quality performance and advanced technology of Dyson vacuum cleaners.

8.      The monetary and reputational damage to Dyson's vacuum cleaner products that Defendants' campaign of false advertising is likely to cause is considerable and will likely grow rapidly unless Defendants are permanently enjoined from continuing to make these false statements to consumers.

## THE PARTIES

9.      Dyson is an Illinois corporation having its principal place of business located at 600 West Chicago Avenue, Suite 275, Chicago, Illinois 60654.  Dyson is an affiliate of the Dyson group of companies based in the United Kingdom. (Dyson and the Dyson group of companies are sometimes collectively referred to as the "Dyson Companies").  The Dyson Companies design, market, and sell technology products and related accessories, including cylinder, upright and handheld vacuum cleaners, and various parts and accessories for those vacuum cleaners.  These products, including vacuum cleaners, are sold throughout the U.S. and in the State of California, including this District.

10.      Defendant Garry Vacuum, LLC ("Garry") is registered as a limited liability company in the State of Delaware, with its principal place of business located at 7821 Orion Avenue, Suite 200, Van Nuys (Lake Balboa), California 91406.  Garry maintains a customer service address at P.O. Box 9169, Van Nuys, California 91409.  Garry also maintains another office in this District located at 8950 Toronto Avenue, Rancho Cucamonga, California 91730.  Garry markets and

sells the Garry Vacuum and is an affiliate, subsidiary, or other entity that is a part of Defendant Envion, LLC ("Envion").

11.     Envion is registered as a limited liability company in the State of Delaware, with its principal place of business located at 7821 Orion Avenue, Suite 200, Van Nuys, California 91406.  Envion markets and sells air purification, air sanitation, humidification, home heating, and floor care products, including the Garry Vacuum.

12.     Defendants jointly manufacture, market, sell, offer to sell, and otherwise distribute the Garry Vacuum on the Internet at, among other places, Garry's website, <www.garryvac.com>.  The offending advertising statements have been broadcast and otherwise published in various locations throughout the country, including in this District.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*.  The Court has supplemental jurisdiction over Dyson's state law claims under 28 U.S.C. § 1367(a).

14.     This Court has personal jurisdiction over Defendants because they each have a principal place of business in the State of California and sell and offer for sale products (including via advertising at issue in this suit) in the State.  The Court also has personal jurisdiction over Defendants under Cal. Code Civ. P. § 410.10 because, among other things, the injury caused to Dyson occurred in the State of California as a result of Defendants' dissemination of the advertisements at issue in California, including in this District, and because Defendants otherwise conduct business in the State of California, including in this District.

15.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (c) because Defendants are subject to personal jurisdiction in this District and, on that basis, are deemed to reside in this District.  Venue is also proper in this District

under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District.

## BACKGROUND

**Dyson's Technologically Advanced Vacuum Cleaners**

16.    Research, design and development are at the core of the Dyson Companies' business.  Dyson vacuum cleaners were originally developed as a solution to the problem plaguing conventional bagged vacuum cleaners – the loss of suction power and cleaning capability as airflow to the vacuum bag was blocked by dust.  To solve the loss of suction problem associated with traditional vacuums, the Dyson Companies' founder, chairman, and principal inventor James Dyson, experimented for years to develop a cyclonic vacuum technology that separated dirt and debris from the vacuum's incoming air flow while maintaining a constant high level of suction through the life of the vacuum.  This technology was developed as Dyson's Dual Cyclone™ technology and then further perfected into Dyson's Root Cyclone™ technology, which spreads the air flow through many cyclones to generate even higher suction power, resulting in vacuums with more dust and dirt pick-up and even better cleaning performance.  Instead of relying on bags and filters to trap dust, a Dyson vacuum uses its patented Cyclone™ technology to spin dirt out of the air.

17.    During the 1980s and 1990s, the Dyson Companies obtained patents and introduced their vacuum cleaners in Japan and the United Kingdom, where they rapidly gained market share.  In just a few short years, Dyson vacuum cleaners went from being a new entrant in the British market to the British market leader in dollar volume of sales.  The same thing occurred in the U.S.  Dyson vacuum cleaners were not introduced in the U.S. until 2002, but by 2005, Dyson was the largest selling brand of upright vacuum cleaners in the U.S. by dollar volume of sales.  Today Dyson remains the U.S. dollar share market leader.

18.     The Dyson Companies' history of product innovation continued with the development of the Dyson Ball™ technology, which greatly enhanced the maneuverability of Dyson vacuum cleaners.  Using a single large, colored, glass-reinforced polypropylene ball as its base, Dyson Ball™ vacuum cleaners are able to glide over the floor due to the rotation of the ball.  The ball is connected to the brush of the vacuum using a patented linkage system that turns the brush head in the same direction as the ball.  Due to this innovation, Dyson Ball™ vacuums are able to easily and fluidly move forward and backward and change direction on the surface being vacuumed.  Changing the vacuum's direction on the surface being cleaned is done easily with a simple twist of the wrist because the brush head is designed not to lose contact with the floor as the brush head turns in synch with the rotating ball.  The Dyson motor is also located within the ball, which keeps the machine's center of gravity lower than in traditional models, thus reducing its weight in the user's hand and enhancing its maneuverability.

19.     Over time, Dyson has brought to the market a variety of upright vacuum cleaners.  Currently, Dyson markets and sells the DC14, DC17, DC24, DC25 and DC28 upright vacuum models.  Each of the currently marketed models incorporates Dyson technological advances that enable them to be extremely high-performing and long lasting. In or about March 2008, Dyson introduced in the U.S. the DC25 model, which has become Dyson's most popular vacuum in the U.S.

20.     Dyson sells its upright vacuum cleaners at retail outlets throughout the U.S., including Best Buy, Target, Bed Bath & Beyond, Kohl's, Sears, Lowe's, Home Depot, Sam's Club, and Wal-mart.   At present, the manufacturer's suggested retail price ("MSRP") for the DC25 All Floors model is $499.99.  None of Dyson's upright vacuum models retails for more than $599.99.

**The Garry™ Ultra-Light Upright Vacuum by Envion™**

21.     The Garry Vacuum is an upright vacuum marketed and sold by Defendants.  The Garry Vacuum was historically sold through direct marketing

efforts on Garry's website and via infomercial advertising.  Just recently, the Garry Vacuum also became available for sale in Bed Bath & Beyond ("BB&B") retail stores, where it is sold alongside Dyson vacuums, and on BB&B's website.

22.     According to Garry's website, <www.garryvac.com>, the Garry Vacuum may be purchased via the website for either four or five payments of $49.95 each, plus $39.95 for shipping, for a total of $239.75-$289.70.  The Garry Vacuum is available at BB&B for a retail price of $199.99.

**The Garry Vacuum Infomercial and Commercial**

23.     The Garry Vacuum is advertised through an approximately 25-minute infomercial (the "Infomercial") that has appeared on television in California and in other states.  The Infomercial is also available on YouTube in three overlapping parts:

Part 1:

   <www.youtube.com/watch?v=4DXYdGkP2Wg&feature=player_embedded>

Part 2:

   <www.youtube.com/watch?v=CHPlAdlAvQY&feature=related>

Part 3:

   <www.youtube.com/watch?v=4G6OeEBlAyY&feature=related>

24.     The Infomercial began running last year and continues to be broadcast.  Since its inception, Defendants have spent in excess of $4.7 million running the Infomercial on numerous television channels, including popular cable and satellite television channels, such as Home & Garden Television, TV Food Network, Women's Entertainment, USA Network, The History Channel, The Discovery Channel, and many others.

25.     The Garry Vacuum is also advertised through an approximately 5-minute commercial (the "Commercial") streamed on Garry's website at <www.garryvac.com/video.html>.  The Commercial appears to run twice in its

entirety within the longer 25-minute Infomercial.  The Commercial has been, and continues to be, streamed on Garry's website.

26.     Both the Infomercial and Commercial (together, the "Advertisements") are replete with false claims, both bald assertions and false establishment claims, which individually and together communicate the unambiguous and explicit message that, in various important respects, the performance and handling of the Garry Vacuum are at least as good as, and in some respects better than, Dyson vacuum cleaners, and at a much lower price.

## DEFENDANTS' FALSE ADVERTISING
## AND PRODUCT DISPARAGEMENT

### Defendants' Disparagement of Dyson Vacuum Cleaners

27.     The Advertisements make a number of false and disparaging claims regarding Dyson vacuum cleaners, several examples of which are described below.

28.     *First*, the Infomercial falsely claims that the Dyson vacuum cleaner was a "great machine in [its] day," but that the Garry Vacuum now "delivers all the leading edge technologies Dyson doesn't have . . . at only one-third the cost," that there has "never been a better cleaning machine," and that "Garry takes vacuum technology further" by making an "amazing" vacuum for a "fraction" of what one pays for a Dyson vacuum cleaner.  In context, these claims communicate the false message that the technology found in the Garry Vacuum is an improvement over, and superior to, Dyson vacuum cleaners.  These claims are false, as the technology underlying Dyson vacuum cleaners is far superior to the Garry Vacuum.

29.     *Second*, the Advertisements communicate that Garry Vacuum "does the exact same thing" as similar vacuums that cost "6 or 700 dollars," with Dyson being a frequently named competitor to which the Garry Vacuum is compared. (Indeed, Dyson is the only named competitor in the commercial to which Garry could be subjecting this comparison, since the price point of the other named competitor is not close to "6 or 700 dollars.")  Thus, the claim communicates the

1  message that the Garry Vacuum performs at least as well as Dyson vacuum
2  cleaners.  This message is literally false and misleading because the performance
3  of the two vacuums could hardly be more different.  In industry standard tests
4  measuring both the suction power and the dust pick-up capability of the vacuums
5  on multiple surfaces, Dyson vacuum cleaners are vastly superior to the Garry
6  Vacuum.  Thus, the Garry Vacuum cannot "do[ ] the exact same thing" as Dyson
7  vacuum cleaners.

8       30.   Defendants' false and disparaging claims about Dyson vacuum
9  cleaners and the purported superiority of the Garry Vacuum are not limited to the
10  Internet and a television infomercial, but also appear on the product box itself.  The
11  Garry Vacuum comes packaged in a box which claims that it "offers unsurpassed
12  maneuverability, making household cleaning easier than ever before!"  That claim
13  too is literally false.



23       31.   *Third*, the Advertisements contain a disparaging reenactment of a
24  supposed vacuum user coughing in a cloud of dust as she empties what is
25  identified as a Dyson dirt cup by holding the cup over a garbage can and unloading
26  its contents above it.  Similarly, the Infomercial presents a false and disparaging
27  enactment of infomercial actors emptying a Dyson dirt cup by holding it over a
28  plexiglass box and unloading its contents above it, showing all of the actors

coughing, requesting that a window be opened, and lamenting the mess caused by the emptying of the Dyson dirt cup. In that depiction, one of the actors states that the way to empty dust from the Dyson cup is to "shake it out", which is completely contrary to the directions for Dyson upright vacuums

32.     Defendants' demonstration falsely communicates, and is likely to mislead consumers into believing, that Dyson upright vacuum cleaners cause dirty and unhealthy conditions when used as directed. *First,* Garry's reenactment, with the dust bin held high over a plexiglass box, greatly exaggerates and in fact distorts the conditions under which any consumer would empty a dust bin in normal use. *Second,* the manner in which the Garry Vacuum actors are shown emptying the dirt cup is completely contrary to the clear user instructions provided by Dyson in its upright vacuum cleaner manuals.  For example, according to the instructions for the DC25 All Floors model, the Clear bin™ (in which dust and debris collect) is either placed completely in the trash receptacle or completely surrounded by a trash bag before the red release button is pressed which prevents dust and other vacuumed materials from entering the air (see image below, excerpted from the instructions included with the Dyson DC25 vacuum cleaner).



1  In short, and as seen in the graphic above, when the Dyson instructions are

2  followed, the Clear bin™ directly releases the debris without the contents being

3  blown about the room by ambient air currents.  Indeed, Dyson upright vacuums

4  have been certified "Asthma and Allergy Friendly" by the Asthma and Allergy

5  Foundation of America, a private not-for-profit patient advocate and education

6  organization dedicated to finding a cure for and controlling asthma and allergic

7  diseases, under a testing protocol which includes evaluating potential allergen

8  exposure during bin/bag change or emptying.  Thus, Defendants' claims are false

9  by necessary implication because the words and images, considered in context,

10  necessarily and unambiguously imply that emptying the receptacle in which the

11  vacuumed dust is stored in a Dyson upright vacuum cleaner will result in the dust

12  being recirculated into the air and floors of the user's home.

13  **Defendants' False Establishment Claims**

14  33.    In addition to making false establishment claims concerning the

15  performance of Garry vacuums—such as Garry's claim that its vacuum cleans and

16  purifies the air with hypoallergenic filtration and germicidal bags that trap "99% of

17  all dirt, dust, germs and allergens;" and that just one Garry machine can vacuum up

18  twenty years of household dirt—the Advertisements also make false establishment

19  claims regarding the performance of Dyson vacuum cleaners.

20  34.    *First*, in the Infomercial, Defendants' spokesperson conducts a

21  "demonstration" of the Garry Vacuum's supposed suction power using a suction

22  meter, which purports to show the Garry Vacuum outperforming a competitor.  In

23  the demonstration, while the competitor can hold only 9 one-pound weights with

24  its suction power against the weight of gravity, the Garry Vacuum appears to be

25  able to hold more.  The Infomercial spokesperson then concludes that the Garry

26  Vacuum has "40% more suction power than" the competitor.  The demonstration is

27  conducted with a vacuum cleaner product not sold by Dyson, but the

28  demonstration is both preceded by the Commercial, which explicitly names Dyson

as the Garry Vacuum's competitor, and is followed by purported cleaning "challenges" comparing the Garry Vacuum cleaner to two other vacuum cleaner products, one of which is the discontinued Dyson DC15.  Moreover, in the Commercial, the claim that the Garry Vacuum has "40% more suction power than the leading competition" is repeated without reference to any particular competitor, although Dyson is disparagingly referenced throughout the Advertisements.  A similar claim touting the superiority of the Garry Vacuum's suction power also appears on Garry's website, and indeed, Dyson is a competitor mentioned in the "Customer Reviews" section of the Garry Vacuum webpage.

35.    Defendants' demonstration falsely communicates, and is likely to mislead consumers into believing, that the Garry Vacuum has superior suction power compared to Dyson vacuum cleaners.  However, Defendants' own demonstration does not support this claim because it was not conducted with a Dyson vacuum.  Moreover, there is an industry accepted standard for testing suction power, which Defendants did not refer to and apparently did not employ in their demonstration.  Using that industry standard test, Dyson upright vacuum cleaners have vastly superior suction power as compared to the Garry Vacuum.  Thus, Defendants' "40% more suction power" claim is false versus Dyson vacuums.

36.    *Second*, in the Infomercial, Defendants' spokesperson conducts a series of five timed cleaning "challenges," which purport to show that the Garry Vacuum can clean in "half the time" as compared to two competitors, one of which is the discontinued Dyson DC15:

(a)    In the first challenge, the actors are asked to lift their respective vacuums with one pinky finger.  The actor lifting the Garry Vacuum can seemingly lift it easily, while the actors lifting the Dyson vacuum and the other competitor product appear to not even be able to raise their vacuums off the floor.  The spokesperson concludes that "Garry weighs in at less than

either of the other vacs.  Its ultra-light weight design is 9 pounds – less than half the weight of the Dyson."  The Garry Vacuum is deemed the winner of this challenge.

(b) In the second challenge, the vacuums are evaluated for their ability to clean underneath a couch.  While the actor using the Garry Vacuum easily fits the vacuum underneath the couch and cleans the debris, the actor using the Dyson DC15 is shown unable to even push the Dyson vacuum underneath the couch due to its physical configuration.  The spokesperson concludes that "[t]he Dyson's super high profile doesn't allow it to get under or around the sofa.  You actually have to move the sofa to get under there. That will slow you down."  The Garry Vacuum is also deemed the winner of this challenge.

(c) In the third challenge, the vacuums are evaluated for their ability to clean a chair on which dry cereal has been spilled.  The Garry Vacuum is shown to quickly clean the spill using its on-board tools, while the spokesperson states, in reference to the Dyson DC15 tools, that the actor "is having trouble just putting it together."  The Garry Vacuum is again deemed the winner of this challenge.

(d) In the fourth challenge, the vacuums are evaluated for their ability to pick-up debris sprinkled along a baseboard.  The Garry Vacuum is shown cleaning the debris completely, while the Dyson vacuum appears to perform comparably but does not completely clear away the debris.  The spokesperson concludes that, "while the Dyson does a better job [than the other competitor vacuum], it still misses the mark.  Garry edges out the competition with its superior suction power, saving even more time."  Here, the Garry Vacuum is deemed to have "tied" with the Dyson DC15.

(e) In the fifth challenge, the vacuums are evaluated for their ability to clean up debris and dirt sprinkled across a carpet in a lengthy, straight line.

The Garry Vacuum is shown winning this "race."  The spokesperson concludes, "Garry, the No-Back-Track-Vac, crosses the finish line first, while the others, well, are left in the dust."

37.     On the basis of these challenges, the Infomercial concludes that, overall, the Garry Vacuum cleans in "half the time."  The Advertisements repeat this claim, asserting that the Garry Vacuum can "[g]et your carpets and your home clean in half the time for a fraction of the cost of the . . . Dyson," and that the Garry Vacuum "gives you the great gift of more time by cutting your cleaning time nearly in half."  A "Real User" of the Garry Vacuum also provides a testimonial that "[t]he Garry definitely cuts my cleaning time in half."  Moreover, a similar claim ("Cuts cleaning time in HALF!") appears on Garry's website.

38.     Defendants' five challenges purporting to compare the Garry Vacuum and a discontinued Dyson vacuum cleaner falsely communicate, and are likely to mislead consumers into believing, that Dyson vacuum cleaners do not perform as well as the Garry Vacuum.  First, the challenges together, in context, communicate the false message that the Garry Vacuum cleans as well as Dyson vacuums.  In fact, using industry standard dust pick up tests, Dyson vacuums are far superior to the Garry vacuum in picking up dust on carpets and bare floors.  Moreover, many of Defendants' statements with respect to, and depictions accompanying, their five challenges are also false and misleading.

39.     First, the statement that the weight of the Garry Vacuum "is 9 pounds – less than half the weight of the Dyson" is untrue.  In fact, according to Consumer Reports, the Garry Vacuum only achieves a 9-pound weight *if the tools, cord and hose are removed* prior to weighing.  The Dyson DC25 All Floors, the leading selling Dyson vacuum, weighs just over 16 pounds, and the Dyson DC24 – a light-weight model – weighs in at 11.65 pounds, and both of these Dyson vacuums are measured *according to industry standards which include the power cord and any accessories which fit on the product.*  Moreover, the visual accompanying this

statement shows the actor lifting the Dyson vacuum to be having great difficulty lifting the Dyson vacuum off the floor, and the Infomercial spokesperson states that "[Y]our Dyson weighs 20 pounds, so I know it can't go up and down the stairs very easy." In fact, the Dyson DC25 as well as the other Dyson upright vacuums that Dyson currently offers for sale can easily be lifted and carried down stairs, contrary to the depiction and statements in the advertisements.

40.    Second, Defendants' statement with regard to the second challenge that "[t]he Dyson's super high profile doesn't allow it to get under or around the sofa.  You actually have to move the sofa to get under there" is false and deceptive in multiple respects: (a) the Dyson vacuum depicted when this statement is made, the DC15, is no longer offered for sale by Dyson, and has not been for about 15 months; and (b) the statements ignore that Dyson vacuum cleaners come with easily accessible on-board tools to allow for cleaning under furniture and other places where the physical configuration of the vacuum might not otherwise permit access.

41.    Third, Defendants' fourth challenge, which shows the Garry Vacuum picking up more debris than a Dyson vacuum and features an actor generously characterizing the result as a "tie" between Garry and Dyson, is false, because in industry standard testing, Dyson vacuums statistically significantly outperform the Garry Vacuum in pick-up testing.

42.    Fourth, Defendants' fifth challenge, which purports to time the Garry Vacuum and a no-longer-marketed Dyson DC15 vacuum picking up dirt sprinkled on a carpet in a straight line, which shows the Garry Vacuum finishing before the Dyson, and which claims that the Garry Vacuum cleans "in half the time", is false in multiple respects: (a) in context, the advertisement claims that the Garry Vacuum cleans as well as the Dyson in half the time, when in fact, Dyson upright vacuums are statistically significantly superior to the Garry Vacuum in cleaning; (b) the Dyson vacuum depicted in this challenge, the DC15, is not offered for sale

by Dyson, and has not been for 18 months; and (c), the fifth challenge was rigged, and in all events, does not accurately demonstrate the true relative speed or ease with which a Garry Vacuum and Dyson vacuums can vacuum a carpeted or bare surface.

**Defendants' False Price Point Claims**

43.     Finally, the Advertisements make a number of false claims regarding the price difference between the Garry Vacuum and Dyson vacuum cleaners.  For example, the Advertisements falsely identify a "$700 Dyson."  Similarly, the Advertisements admonish viewers not to "spend  . . . up to $700 on a Dyson."  The Advertisements also feature testimonials from purported "Real Users" of the Garry Vacuum, one of whom claims that she "really [does] not want to pay 6 or 700 dollars for a high-performance vacuum cleaner," with Dyson being a frequently named competitor to which the Garry Vacuum is compared.  Likewise, the Infomercial falsely claims that the Garry Vacuum "delivers all the leading edge technologies Dyson doesn't have . . . at only one third the cost."  These messages are literally false because they misrepresent the actual price difference.  In fact, no Dyson upright vacuum cleaner sells for more than $599.99, and the Dyson DC15 – to which the Advertisements expressly refer – has no price point to which the Garry Vacuum can fairly be compared because the DC25 is no longer offered for sale by Dyson.  Accordingly, the Garry Vacuum, priced at $239.75 or more on Garry's website, is not one-third the cost of any Dyson upright vacuum and is more than one-half the cost of the lowest priced Dyson upright vacuum.

## HARM CAUSED BY DEFENDANTS' ACTIONS

44.     Defendants have made false advertising claims representing that its product, the Garry Vacuum, is at parity with, or superior to, Dyson's vacuum cleaners in various respects.

45.     Defendants' advertisements plainly state and necessarily imply to consumers that the Garry Vacuum is the performance equivalent of Dyson vacuum

1  cleaners, or superior to Dyson vacuums, at a lesser price, when this is
2  demonstrably false.

3      46.    The false and deceptive statements and advertising claims set forth
4  herein are part of a common marketing scheme or plan of Defendants to make
5  purchasing consumers believe the false message that the Garry Vacuum is at least
6  equivalent to Dyson vacuum cleaners in performance and handling at a much
7  lower price.

8      47.    Defendants' portrayal of Dyson products falsely communicates,
9  confuses, and deceives consumers, intentionally, through words and visual images,
10 and through a combination of words and visual images, into believing that the
11 Garry Vacuum is at parity with, or superior to, Dyson vacuum cleaners,
12 specifically with respect to performance claims of vacuum cleaner suction
13 technology and power, maneuverability, and cleaning performance.  These
14 messages are materially false and deceptive because the Garry Vacuum does not
15 perform better than or equal to Dyson vacuum cleaners in respect of these
16 qualities.

17     48.    Defendants' portrayal of Dyson vacuum cleaners falsely
18 communicates, confuses, and deceives consumers, intentionally, through words
19 and visual images, and through a combination of words and visual images, into
20 believing that Dyson vacuum cleaners do not perform better than the Garry
21 Vacuum in various material respects.

22     49.    Defendants' advertisements were intended to falsely communicate
23 and deceive consumers into believing that Dyson vacuum cleaners, despite being
24 more than twice as expensive as the Garry Vacuum, are, at most, merely equivalent
25 to the Garry Vacuum in performance.

26     50.    The foregoing actions of Defendants were undertaken willfully and
27 wantonly and with a conscious disregard for Dyson's rights.

28

51.     Before Defendants' wrongful conduct, Dyson had developed and maintained substantial goodwill and reputation with regard to its products and business.  Defendants' wrongful conduct, as described in this Complaint, is likely to cause substantial damages, including harm to the reputation of Dyson's products and goodwill, and expenses in time and money incurred to combat Defendants' false statements.

52.     As a direct and proximate result of Defendants' false and deceptive campaign, Dyson is likely to suffer immediate and continuing irreparable injury for which there is no adequate remedy at law.

53.     Further, Defendants' actions are likely to have caused and will likely continue to cause Dyson to suffer substantial damages, including loss of sales and profits of its vacuum cleaner products and loss of market share.

54.     The foregoing acts have occurred in, or in a manner affected, interstate commerce.

## CAUSES OF ACTION

### COUNT I

### FALSE ADVERTISING

### IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A)

55.     Dyson realleges and incorporates by reference paragraphs 1 through 54 of the Complaint, as though set forth in full herein.

56.     The foregoing acts of Defendants constitute false advertising and false representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     As a direct and proximate result of Defendants' false and deceptive campaign, Dyson is suffering immediate and continuing irreparable injury for which there is no adequate remedy at law.

58.     As a direct and proximate result of these actions, Dyson has suffered and will continue to suffer significant monetary damages.

59.     This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT II

## FALSE ADVERTISING

## IN VIOLATION OF CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*

60.     Dyson realleges and incorporates by reference paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

61.     Dyson and Defendants are engaged in trade and commerce in the State of California and both are engaged in interstate trade or commerce.

62.     Defendants' unscrupulous actions constitute unfair competition and deceptive trade practices and have caused, and, unless enjoined by this Court, will continue to cause, confusion and public deception in the marketplace and injury to Dyson's goodwill and reputation, for which Dyson has no adequate remedy at law.

63.     Defendants have caused a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of their products, causing a likelihood of confusion as to Defendants' affiliation, connection, or association with Dyson, and are otherwise damaging Dyson and the public. Defendants have also disparaged Dyson and its products' quality, thereby damaging Dyson.

64.     As a direct and proximate result of Defendants' false and deceptive campaign, Dyson is suffering immediate and continuing irreparable injury for which there is no adequate remedy at law.

65.     Defendants have caused, and are likely to continue causing, substantial injury to the public and to Dyson.  As a direct and proximate result of these actions, Dyson has suffered and will continue to suffer significant monetary damages.

66.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade and capitalize on the goodwill associated with Dyson's famous

1   trademarks, trade dress, brand, and goodwill, thereby causing immediate

2   substantial, and irreparable injury to Dyson and to the public.

3         67.    Defendants' acts alleged herein constitute unfair and deceptive trade

4   practices in the course of business, trade, or commerce within the meaning of Cal.

5   Bus. & Prof. Code § 17500 *et seq.*  Dyson is entitled to injunctive relief and to the

6   recovery of actual damages, compensatory damages, attorneys' fees, costs,

7   Defendants' profits, and enhanced profits.  Moreover, Defendants' intentional,

8   willful, and malicious acts were done with the knowledge, intent, authorization,

9   and/or ratification of their respective limited liability company members, thereby

10  entitling Dyson to punitive damages to punish and deter Defendants from

11  continuing such acts.

## COUNT III

### UNFAIR AND DECEPTIVE TRADE PRACTICES

### IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*

15        68.    Dyson realleges and incorporates by reference paragraphs 1 through

16  67 of the Complaint, as if fully set forth herein.

17        69.    Dyson and Defendants are engaged in trade and commerce in the

18  State of California and both are engaged in interstate trade or commerce.

19        70.    Defendants' unscrupulous actions constitute unfair competition and

20  deceptive trade practices and have caused, and, unless enjoined by this Court, will

21  continue to cause, confusion and public deception in the marketplace and injury to

22  Dyson's goodwill and reputation, for which Dyson has no adequate remedy at law.

23        71.    Defendants have caused a likelihood of confusion or

24  misunderstanding as to the source, sponsorship, or approval of their products,

25  causing a likelihood of confusion as to Defendants' affiliation, connection, or

26  association with Dyson, and are otherwise damaging Dyson and the public.

27  Defendants have also disparaged Dyson and its products' quality, thereby

28  damaging Dyson.

72.     As a direct and proximate result of Defendants' false and deceptive campaign, Dyson is suffering immediate and continuing irreparable injury for which there is no adequate remedy at law.

73.     Defendants have caused, and are likely to continue causing, substantial injury to the public and to Dyson.  As a direct and proximate result of these actions, Dyson has suffered and will continue to suffer significant monetary damages.

74.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade and capitalize on the goodwill associated with Dyson's famous trademarks, trade dress, brand, and goodwill, thereby causing immediate substantial, and irreparable injury to Dyson and to the public.

75.     Defendants' acts alleged herein constitute unfair and deceptive trade practices in the course of business, trade, or commerce within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq.*  Dyson is entitled to injunctive relief and to the recovery of actual damages, compensatory damages, attorneys' fees, costs, Defendants' profits, and enhanced profits.  Moreover, Defendants' intentional, willful, and malicious acts were done with the knowledge, intent, authorization, and/or ratification of their respective limited liability company members, thereby entitling Dyson to punitive damages to punish and deter Defendants from continuing such acts.

**COUNT IV**

**UNFAIR COMPETITION**

**<u>IN VIOLATION OF CALIFORNIA COMMON LAW</u>**

76.     Dyson realleges and incorporates by reference paragraphs 1 through 75 of the Complaint, as if fully set forth herein.

77.     Defendants' acts alleged herein constitute unfair competition in the course of business, trade, or commerce in violation of the common law of California.  Dyson is therefore entitled to injunctive relief and to the recovery of

23

**COMPLAINT FOR INJUNCTION, DAMAGES, AND OTHER RELIEF**

1   actual damages, compensatory damages, attorneys' fees, costs, Defendants' profits,

2   and enhanced profits.  Moreover, Defendants' intentional, willful, and malicious

3   acts were done with the knowledge, intent, authorization, and/or ratification of

4   their respective limited liability company members, thereby entitling Dyson to

5   punitive damages to punish and deter Defendants from continuing such acts.

6                              **PRAYER FOR RELIEF**

7            WHEREAS, Dyson prays for relief against Defendants and respectfully

8   requests an entry of judgment as follows:

9            1.     For a permanent injunction that:

10                  a.     Permanently enjoins Defendants, their officers, agents,

11           servants, and employees, and all persons in active concert and participation

12           with them, including their affiliates, from further disseminating the false and

13           deceptive advertising claims in any form or medium;

14                  b.     Requires Defendants to withdraw and/or retrieve all offending

15           advertising materials from the marketplace;

16                  c.     Requires Defendants to disseminate among consumers

17           corrective advertising, including corrective product packaging, to dispel the

18           false and deceptive messages contained in the subject advertising;

19           2.     For an order directing Defendants to account for, and to pay over to

20   Dyson, all gains, profits, and advantages derived by them from the above-

21   described wrongful acts;

22           3.     For monetary damages sustained by Dyson as a result of Defendants'

23   unlawful conduct, in an amount to be proved at trial, and to be multiplied or

24   otherwise enhanced because of Defendants' willful and deliberate activities

25   described herein;

26           4.     Directing that Defendants pay Dyson punitive damages resulting from

27   their state law violations;

28

1   5. Directing that Defendants pay Dyson the costs of this action and its

2 reasonable attorneys' fees incurred herein as authorized by law; and

3   6. Granting Dyson such other and further relief as this Court deems just

4 and proper.

5

6 Dated:  March 4, 2010   ROBERT H. HORN
            LAWRENCE I. WEINSTEIN

7           BRENDAN J. O'ROURKE
           PROSKAUER ROSE LLP

8

9         By:_____

10          ROBERT H. HORN
          Attorneys for Plaintiff

11         DYSON, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTION, DAMAGES, AND OTHER RELIEF

# DEMAND FOR TRIAL BY JURY

Under Rule 38(b) of the Federal Rules of Civil Procedure, Dyson hereby demands a trial by jury of all issues properly triable by a jury in this case.

Dated:  March 4, 2010

ROBERT H. HORN
LAWRENCE I. WEINSTEIN
BRENDAN J. O'ROURKE
PROSKAUER ROSE LLP

By:_____

ROBERT H. HORN
Attorneys for Plaintiff
DYSON, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV10- 1626 MMM (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Robert H. Horn (SBN 134710)
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA 90067-3206
Telephone: (310) 557-2900

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Dyson, Inc.,

PLAINTIFF(S)

v.

Garry Vacuum, LLC and Envion, LLC,

DEFENDANT(S).

CASE NUMBER

CV10  1626  MMM  VBKx

**SUMMONS**

TO:    DEFENDANT(S): Garry Vacuum, LLC and Envion, LLC

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Robert H. Horn, Esq._, whose address is _Proskauer Rose, LLP, 2049 Century Park East, 32nd Floor, Los Angeles, CA 90067-3206_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**CHRISTOPHER POWERS**

Dated: _____MAR  4 2010_____

By: _____
               Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    **SUMMONS**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| DYSON, INC. | GARRY VACUUM, LLC and ENVION, LLC |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Robert H. Horn (SBN 134710)<br>PROSKAUER ROSE LLP, 2049 Century Park East, 32nd Floor<br>Los Angeles, CA  90067-3206; Telephone: (310) 557-2900 | Laurie McLaughlin<br>Senior VP and General Counsel<br>Slymark, Inc.<br>Lake Balboa, CA 91406; Telephone: (818) 217-2000 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ MONEY DEMANDED IN COMPLAINT: $ To Be Determined at Trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Civil action for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and related violations of California statutory and common law.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____   CV10 1626

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | ILLINOIS |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date   3/4/10

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |